IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JAMES RAY DEMPS, <br> TDCJ-CID No. 02420939, | § <br> § <br> § | |
| Plaintiff, | § <br> § | |
| v. | § <br> § | 2:24-CV-198-Z-BR |
| VICTORIO R. GALLEGOS JR., | § <br> § <br> § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS TO DISMISS COMPLAINT**

Before the Court is the Complaint (ECF 3) filed by Plaintiff James Ray Demps ("Demps") against Defendant Victorio R. Gallegos Jr. ("Gallegos"), alleging violations of Demps' civil rights. Demps filed this lawsuit *pro se* while a prisoner in the Clements Unit of the Texas Department of Criminal Justice ("TDCJ") and he has been granted permission to proceed *in forma pauperis*. As such, his lawsuit is subject to preliminary screening as provided by the Prison Litigation Reform Act ("PLRA"). Pursuant to such screening and for the reasons stated below, the Magistrate Judge recommends that Demps' Complaint be DISMISSED pursuant to 28 U.S.C. §§ 1915 and 1915A.

**I. STANDARD OF REVIEW**

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* Section 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). When analyzing a prisoner's complaint, the

court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480, 483-84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the court accepts well-pleaded factual allegations as true, but does not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs still must plead factual allegations that raise the right to relief above a speculative level. *Id.* (*citing Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. LEGAL ANALYSIS

### A.    Factual Background.[1]

Demps alleges that he never received some of his personal property after he was transferred from the Gib Lewis Unit to the Clements Unit. (ECF 3 at 4). As a result, his father repeatedly called TDCJ officials, asking for reimbursement for the missing personal property. (*Id.*). Soon after, Gallegos removed Demps and his cellmate from their cell, stating that he needed to inventory Demps' property to look for legal mail that Demps had reported missing. During the search, Gallegos confiscated photos, envelopes, magazines, stamps, comic books, lamps and a dictionary. (ECF 8 at 1-2). Demps was not provided with confiscation paperwork or initially told why the property was confiscated.

---

[1] These background facts are taken from Demps' Complaint (ECF 3), and questionnaire responses (ECF 8) and are presumed to be true for the purposes of screening.

Demps and his cellmate were placed in a holding cell by Gallegos for the duration of the cell search. As Gallegos was handcuffing Demps to return him to his cell, Gallegos "snatched" him by the handcuffs through the door slot, causing Demps' head and neck to slam against the door. (*Id.*). Demps filed this lawsuit on September 10, 2024, alleging that Gallegos violated his civil rights by retaliating against him, confiscating his property and using excessive force.

**B.     Retaliation.**

Demps first alleges that Gallegos retaliated against him because Demps' father was repeatedly calling the ombudsman, the deputy director and the prison unit, seeking financial reimbursement for Demps' missing personal property. (ECF 3 at 4, ECF 8 at 5, 6). A valid retaliation claim requires a plaintiff to allege that: (1) he exercised a specific constitutional right; (2) the defendant intended to retaliate against him because he exercised that right; (3) he experienced a retaliatory adverse act; and (4) the adverse act would not have occurred but for a retaliatory motive. *Welsh v. Cammack,* No. 23-10961, 2024 WL 3649583 at *5 (5th Cir. 2024) (citing *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999)). The Fifth Circuit has defined an actionable retaliatory adverse act as one "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006).

Assuming the truth of Demps' complaint that Gallegos intended to retaliate against him, Demps has not shown that such retaliation was due to Demps exercising a constitutional right. Instead, he alleges that "[t]he only reason that makes sense is retaliation for my father constantly calling the ombudsman, deputy director, and the unit seeking reimburs[]ment for my lost property from the Gib Lewis Unit" and because the incident occurred on the same day Demps' father called the ombudsman's office. (ECF 8 at 5). He further claims that Gallegos told Demps' cellmate that

"it was my father's fault that our property got took." (ECF 8 at 9). Notwithstanding the speculative nature of Demps' allegation, Demps does not allege that Gallegos' actions were in retaliation for Demps exercising a constitutional right; instead, he shows that the retaliation was due to Demps' father advocating on his son's behalf. [I]f the inmate is unable to point to a specific constitutional right that has been violated, the claim will fail." *Jones*, 188 F.3d at 325; *see also Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate a violation of a constitutional right); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) ("To state a claim of retaliation an inmate must allege the violation of a specific constitutional right"). Demps has not shown a constitutional violation by Gallegos; as a result, his retaliation claim should be dismissed.

C.     **Confiscated Property.**

Demps next alleges that Gallegos confiscated numerous photos, envelopes, magazines, stamps, comic books, lamps and a dictionary. (ECF 8 at 1-2). "Prisoners have a cognizable constitutionally protected property interest in their personal property." *Weeks v. Collier*, No. 22-10126, 2023 WL 7703823 at *5 (5th Cir. Nov. 15, 2023) (citing *Eubanks v. McCotter*, 802 F.2d 790, 793-94 (5th Cir. 1986)). Nevertheless, under the *Parratt/Hudson* doctrine, "a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate post[-]deprivation remedy." *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quotation marks and citations omitted). The Texas administrative and judicial systems allow prisoners to raise ordinary tort claims such as conversion or an administrative remedy for lost or damaged property. *See Cathey v. Guenther*, 47 F.3d 162, 164 (5th Cir. 1995); *Spurlock v. Schroedter*, 88 S.W.3d 733, 737 (Tex. App.--Corpus Christi 2002).

Therefore, the initial question is whether Demps has alleged that Gallegos confiscated the personal property pursuant to a state policy or as "random, unauthorized conduct". The U.S. Supreme Court has noted that "[c]onduct is not 'random and unauthorized' … if the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of." *Zinerman v. Burch*, 494 US. 113, 138 (1990) (quoted in *Allen*, 388 F.3d at 149 (5th Cir. 2004)). Demps clearly and undisputedly alleges that Gallegos was acting illegally in confiscating his property rather than in accordance with a state policy. While he states that Gallegos purportedly confiscated his items pursuant to an unspecified policy regarding "altered and questionable ownership," he also states that his items did not violate the policy. (ECF 8 at 5). He does not challenge the policy itself; instead, he alleges that his items complied with the policy but nevertheless were confiscated by Gallegos. Demps states that his named was printed on his magazines, and he has receipts for every comic book, stamp, envelope and the dictionary. (*Id*.). Because Demps alleges that Gallegos' conduct was unauthorized and not pursuant to prison policy, the *Parratt/Hudson* doctrine applies.

As a result, although Demps has a protected property interest in his personal property, "[a] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional *minima* are nevertheless met." *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (quotation marks and citations omitted). In *Brewster*, the Fifth Circuit Court of Appeals held that a due process claim was properly dismissed because Texas law provides the adequate post-deprivation remedy of conversion when property is taken without proper procedures. *Id.* Demps does not allege that his personal property was taken pursuant to anything other than "random, unauthorized conduct" by Gallegos. Because Demps has an adequate post-deprivation remedy under Texas law in that he has the right to sue for conversion in

state court, he does not have a viable Section 1983 due process claim, and such claim should be dismissed.

**D.     Excessive Force.**

Demps next alleges that, as Gallegos was handcuffing him to return him to his cell after the search, Gallegos "snatched me by the handcuffs through the slot, causing my head and neck to slam against the door." (ECF 3 at 4). The Eighth Amendment proscribes the unnecessary and wanton infliction of pain, which includes actions that are "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976). Not all force rises to the level of an Eighth Amendment claim. Specifically, Eighth Amendment protections do not extend to *de minimis* uses of physical force that are not "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). To determine whether a prison official violated an inmate's rights by using excessive force, "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 6-7. Courts must "focus on the prison official's 'subjective intent' and determine it 'by reference to the well-known *Hudson* factors.'" *Byrd v. Harrell*, 48 F.4th 343, 347 (5th Cir. 2022) (quoting *Cowart v. Erwin*, 837 F.3d 444, 452-53 (5th Cir. 2016)). Those factors are "(1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response." *Id*. (quoting *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019)).

Assuming the truth of Demps' allegations, the force appears to be both unnecessary and excessive to the needs of the situation, although Demps alleges no facts showing that Gallegos

intentionally "snatched" him with the intent to cause pain. However, even if Demps had alleged sufficient facts to state a claim that Gallegos maliciously and sadistically used force upon him, he fails to allege that he suffered more than *de minimis* injuries by the use of force. Although a showing of "significant injury" is not required in the context of an excessive force claim, "we do require a plaintiff asserting an excessive force claim to have suffered at least some form of injury." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed. *Glenn*, 242 F.3d at 314.

One way to distinguish if an injury is "*de minimis*" is to consider whether medical care was needed to treat the injury. *See Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). In *Gomez*, the court determined that the plaintiff "did not seek or receive medical treatment" for his alleged injury, and thus his injury was considered *de minimis*:

> In *Siglar*, we described the complained of conduct and injury as follows: "[the corrections officer] twisted Siglar's arm behind his back and twisted Siglar's ear. Siglar's ear was bruised and sore for three days but he did not seek or receive medical treatment for any physical injury resulting from the incident. There is no allegation that he sustained long term damage to his ear." [*Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997)]. We stated that these allegations presented the question "whether Siglar's bruised ear amounts to a 'physical injury' that can serve as the basis for his excessive force" claim, and concluded that because "Siglar's alleged injury—a sore, bruised ear lasting for three days—was *de minimis*" he had therefore "not raised a valid Eighth Amendment claim for excessive force." *Id*.

*Gomez*, 163 F.3d at 924. Demps does not allege that his injury was anything more than temporary pain. He admits that he was seen by medical personnel, although not immediately. He claims that he was given x-rays on his neck, was prescribed ibuprofen, and was told to "try not to move [his neck] to[o] much." (ECF 8 at 10, 11). He apparently was not unduly affected by the use of force, in that he was able to prevent officers from closing the slot in his cell door, necessitating the use of chemical agents. (*Id*. at 10). He apparently received medical attention after chemical agents

7

were used. (*Id.*). Taking Demps' allegations as true, he has alleged, at most, a *de minimis* injury that does not rise to the level of a constitutional violation. *See Westfall v. Luna*, 903 F.3d 534, 549-50 (5th Cir. 2018) (recognizing that abrasions, bruises, bloody urine, and high blood pressure and heart rate are *de minimis* injuries insufficient to support an excessive force claim); *Brooks v. City of W. Point, Miss.*, 639 F. App'x 986, 990 (5th Cir. 2016) (finding that abrasions to hands and knees, some neck and back pain, and unspecified problems with asthma are *de minimis* injuries). Demps has not stated a plausible claim of excessive force against Gallegos, and such claim should be dismissed.

E.     **Leave to Amend.**

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal. *Brewster*, 587 F.3d at 767-68. The district court is not required to allow such an opportunity, though, if the prisoner's claims are clearly frivolous, *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994), or if the prisoner has pleaded his best case in the current complaint. *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020). Demps has fully responded to the Court's questionnaire and has clearly stated his best case; therefore, leave to amend is unnecessary.

## RECOMMENDATION

For the reasons stated above, the Magistrate Judge concludes that Demps' claims should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED October 14, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).